UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARGARETA MANGEAC,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD ARMSTRONG, in his individual and official capacities; DAVID TAYLOR in his individual and official capacities; RICHARD HUMISTON in his individual and official capacities; STEVE BELLOMY in his individual and official capacities; SUSAN ALTMAN in her individual and official capacities,<br><br>    Defendants. | Case No. 1:08-CV-239-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it several pending motions. After oral argument and an evidentiary hearing, the Court enters the following Memorandum Decision and Order.

## PROCEDURAL BACKGROUND

Plaintiff brought this Section 1983 action, alleging that Defendants violated her procedural due process rights under the Fourteenth Amendment when they added her name to the Idaho Adult Protection Registry ("Registry"), a state registry of vulnerable

**MEMORANDUM DECISION AND ORDER - 1**

adult abusers, and maintained her name on the Registry despite her request to have it removed.[1] On March 1, 2010, Defendants filed a motion for summary judgment, and Mangeac filed a motion for partial summary judgment on her claims seeking injunctive and declaratory relief. Notably, Defendants' counsel failed to submit a brief in support of Defendants' motion for summary judgment. He also failed to file an opposition to Plaintiff's motion for partial summary judgment. Ninth Circuit Judge Wallace Tashima, sitting by designation, conducted oral argument and issued an opinion on the motions. Judge Tashima denied Defendants' motion, granted in part Plaintiff's motion, and ordered the parties to meet in good faith to reach agreement on a proposed form of declaratory judgment and permanent injunction.

Defendants hired new counsel after receiving Judge Tashima's decision. After a meeting between Defendants' new counsel, Plaintiff's counsel, and the Court's staff, the Court agreed to stay the requirement that the parties submit a proposed form of declaratory judgment and permanent injunction until after the Court addressed Defendants' then forthcoming motion for reconsideration.

On June 8, 2010, Defendants filed their motion for reconsideration, along with a motion to enlarge the time by which they could file another motion for summary

---

[1] Plaintiff also raises state claims in her complaint which were not raised in her motion for partial summary judgment – that Defendants' creation, maintenance, and use of the AP Registry are in violation of the Idaho Administrative Procedures Act, that Defendants were negligent in adding Plaintiff's name to the AP Registry and maintaining it on the registry, and that Defendants are liable for negligent infliction of emotional distress.

**MEMORANDUM DECISION AND ORDER - 2**

judgment and a motion for summary judgment. On June 25, 2010, the Court conducted a hearing on the motion for reconsideration. In the motion, Defendants argued, in part, that Mangeac lacked standing to bring her claims. After oral argument, the record was still somewhat unclear on whether Mangeac had standing to assert her claims. Therefore, the Court determined that the best way forward was to conduct an evidentiary hearing to make sure the record was fully developed before making a standing determination and deciding the motion for reconsideration. The Court conducted the evidentiary hearing on August 30, 2010 and September 3, 2010, and the parties subsequently filed post-hearing briefs.

## ANALYSIS

1.     **Motion for Reconsideration Legal Standard**

As explained in the Court's earlier Order, a motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principal has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225

U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981) (Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied.

**2.    Defendants' Motion for Reconsideration**

Defendants contend that the Court should reconsider its earlier decision in order to correct the factual record and prevent manifest injustice. Specifically, Defendants ask the Court to reconsider its finding that the Registry violated Mangeac's procedural due process rights and that Defendants be enjoined from automatically adding individuals to the Registry upon receipt of a report of substantiated adult abuse.

**A.    Standing**

Defendants first argue that Mangeac lacks standing to bring her claims for injunctive and declaratory relief. Suits for declaratory or injunctive relief must present a live controversy justiciable under Article III of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (declaratory judgment); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (injunctive relief). An actual, justiciable controversy must exist not only at the moment the suit is initiated, but also at the time that the party's entitlement to the requested relief is decided. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Past injury, without more, cannot form the basis for either injunctive or declaratory relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Haase v. Sessions*, 835 F.2d 902, 911 (D.C.Cir. 1987) (equating case-or-controversy requirement for declaratory judgment with one applicable to request for injunctive relief). Standing may even be addressed for the first time on appeal. *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003). In fact, federal courts are required *sua sponte* to examine jurisdictional issues such as standing. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002).

Defendants suggest that under present circumstances, Mangeac would not suffer an injury based on her two (2005 and 2007) Adult Protection incidents. Defendants reference Susan Altman's testimony in support of their argument. Altman is the current

Program Supervisor for the Idaho Department of Health and Welfare Criminal History Unit. *Tr.* at 15:2-17. Altman testified that Mangeac would not be issued a conditional denial based on either the 2005 or 2007 Adult Protection issues. *Tr.* at 123:10-13.

However, the evidence presented at the evidentiary hearing does not support Defendants' argument. For example, the evidence does not support Altman's blanket assurance that Mangeac would not receive a denial or conditional denial if she self-disclosed the 2007 incident. Altman testified that Carrie Connell is the Criminal History Unit field person in Canyon County, the county in which Mangeac resides. *Tr.* at 119:21-25, Dkt. 131. Altman then testified that if Mangeac applied for a background check now, or in the future, "Carrie [Connell] would know, based upon how this is progressing and all the information that I [Altman] have since learned about Ms. Magee, Ms. Mangeac, and the Adult Protections issues, Carrie [Connell] would not issue her a conditional denial." *Tr.* at 120:3-8.

The problem with Defendants' argument is that it reveals the subjective and somewhat arbitrary nature by which Idaho Department of Health and Welfare ("DHW") issues denials and/or conditional denials. Altman admits that Mangeac would not receive a conditional denial today only because she has discussed the case with Connell. *Tr.* at 131: 17-25, Dkt 131. But what happens if Altman and/or Connell are terminated, retire, or otherwise leave their respective positions tomorrow or sometime in the future? What happens if Connell moves to another county? What happens if Mangeac moves out of

Canyon County and Connell no longer has jurisdiction over Mangeac? Under any of these scenarios, there is no evidence that Mangeac would not receive at least a conditional denial if she applied for a background check.

Defendants next argue that Mangeac lacks standing to bring her claims for past injury. In order to establish Article III standing for these claims, Mangeac must establish three elements: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Mere allegations are not enough. *Id*.

At this point, Mangeac has not put forth any evidence that she was injured in fact. Mangeac's deposition testimony shows that, because of health problems, she has not engaged the Criminal History Unit background check process. Therefore, Mangeac has never actually been denied or conditionally denied in the Criminal History Unit's background check process. *Mangeac Depo.* at 65:1-12, Dkt. 135-1. Mangeac last applied for a background check in 2005 and was cleared. *Tr.* at 112:20-113:2, Dkt. 131.

Moreover, Defendants are correct that any alleged injury at this point is speculative. For example, Mangeac's alleged injury based on St. Luke's decision not to hire her is not the result of DHW's background check policy. *Tr.* at 113:13-114:5. There is no evidence that St. Luke's is affiliated with DHW, and therefore, an application with St. Luke's would not trigger a background check or a review of the Registry. *Tr.* at

234:2-17, Dkt. 131. Thus, Mangeac has provided no evidence that St. Luke's decision not to hire her had anything to do with the Registry. She likewise offered no evidence that it had anything to do with self-disclosure.

Accordingly, under the circumstances of this case, Mangeac presents a live controversy justiciable under Article III of the Constitution for her claims for injunctive and declaratory relief. However, she has not presented facts to support a claim for past injuries. Therefore, the Court finds that Mangeac has standing to bring her claims for injunctive and declaratory relief, but not for her claims for past injuries.

### B. Real or Immediate Threat of Substantial or Irreparable Injury

To obtain injunctive relief, Mangeac must establish that she "faces a real or immediate threat of substantial or irreparable injury. . . ." *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th Cir. 2001). Defendants contend that Mangeac cannot demonstrate a real or immediate threat of substantial or irreparable injury because Mangeac is not listed on the Registry and would not suffer a denial or conditional denial if she applied for a background check or self-disclosed the 2005 or 2007 reports.

As explained above, the evidence does not support Altman's blanket assertion that Mangeac would not receive at least a conditional denial if she applied for a background check or self-disclosed one of the reports. Any number of scenarios – including a change in Altman's or Connell's employment status or Mangeac moving out of Canyon County – could thwart Atlman's arbitrary means of assuring Mangeac will not receive a conditional

denial.

However, as also eluded to above, there remains a question about whether Mangeac intends to ever apply for a background check. When asked if she had decided not to apply for positions requiring the background check, Mangeac responded:

> I don't decide. Right now, I'm not able. I'm very sick, first of all, may liver problem. I can't sleep. My liver is very – you see my – Like I have nonalcoholic sclerosis since that time. And I have depression. I can't sleep. I can't take any pills for sleeping, because like I talk with her, I told her because I'm allergic. I can't take any sleep pills.

*Mangeac Depo.* at 65:1-12, Dkt. 135-1. Because it is unclear whether Mangeac ever intends to apply for a position requiring a background check, there remains a question of fact as to whether Mangeac can demonstrate a real or immediate threat of substantial or irreparable injury.

Under these circumstances, the Court finds that Defendants have met their burden of showing that in order to correct the factual record and prevent manifest injustice, the Court must reconsider its earlier decision. *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). Questions of fact remain as to whether Mangeac can demonstrate a real or immediate threat of substantial or irreparable injury, which prevents the Court from ordering injunctive or declaratory relief at this point. Accordingly, the Court cannot grant Mangeac's motion for partial summary judgment asking for such relief.

3.  **Defendants' Motion for Enlargement of Time to File Summary Judgment**

Defendants ask the Court to extend the time for them to file a motion for summary

judgment. Under Rule 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Whether neglect is excusable requires consideration of four factors: "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2001) (citing *Pioneer Inv. Services Co. v. Brunswick Associates Partnership*, 507 U.S. 380, 395 (1993).[2]

The Court agrees with Defendants that the first two factors weigh in favor of granting the motion for extension of time. The only real prejudice to Mangeac is the prejudice of being deprived of an early victory in the litigation. However, that is not sufficient basis to deny the motion. "Prejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009) *see also Bateman*, 231 F.3d at 1225.

---

[2] Defendants correctly point out that *Bateman* arose in the context of Rule 60(b), but that *Bateman* is persuasive authority because of the "excusable neglect" standard found in Rule 6(b) as well as Rule 60(b). Additionally, the discussion of the *Pioneer* factors in *Bateman* is relevant because it arose in a similar factual context. In *Bateman*, the plaintiff's attorney failed to file a response to the defendant's motion for summary judgment. On appeal, the Ninth Circuit concluded that the attorney's failure to file was the result of excusable neglect.

With respect to delay, Defendants learned of the adverse ruling on their summary judgment motion on the afternoon of May 17, 2010. *Coffman Decl.* ¶ 10. When they learned that former counsel failed to file appropriate summary judgment papers, they immediately retained new counsel. *Coffman Decl.* ¶ 12, Dkt. 103. Defendants' new counsel promptly contacted Mangeac's counsel and the Court and, on June 8, 2010, filed the motion for enlargement of time along with a motion for summary judgment. In total, just over three weeks passed between the first day that Defendants became aware of former counsel's failure to represent their interests and the date when Defendants filed their motion for reconsideration, motion for enlargement of time, and motion for summary judgment. This three-week period is one week less than the month the Ninth Circuit held was reasonable in *Bateman*.

The Court is more concerned with the other two factors – the reason for the delay and whether the Defendants acted in good faith. The Court will address these two factors together because they are somewhat intertwined.

As explained above, and in the Court's earlier order, Defendants' former counsel failed to file briefs in support of Defendants' motion for summary judgment or in opposition to Mangeac's motion for partial summary judgment. Defendants explain that the Department of Administration retains the services of special deputy attorneys general like former counsel to protect the state's interests and relies upon them notify it of any anticipated problems with the litigation. *Coffman Decl.* ¶4, Dkt. 103. Defendants assert

that, as a special deputy attorney general, former counsel was responsible for all substantive legal work on the case, and was obligated to communicate all pertinent information to Risk Management. *Coffman Decl.* ¶4, Dkt. 103.

In this case, Defendants state that former counsel last communicated with the designated claims adjudicator in January 10, 2010, almost two months before the dispositive motion deadline. As a result, Defendants argue that the claims adjudicator reasonably believed that former counsel would file appropriate summary judgment papers within the deadline allowed by the scheduling order and the local rules. Defendants argue that there would have been no reason for the claims adjudicator to double check former counsel's work.

Defendants therefore suggest that the record is clear that the failure is attributable to Defendants' former counsel who failed to meet his professional obligations because of extensive and significant personal challenges. *Former Counsel Decl.* ¶¶ 2-14, Dkt. 102. Given this record, Defendants suggest that there is no factual basis for Mangeac to claim that Defendants acted with anything other than good faith throughout the proceedings or that they should be punished for the personal problems of their former counsel.

Mangeac counters that DHW's own neglect largely contributed to the failure to fully support their motion for summary judgment prior to that motion being denied. Mangeac suggests that the circumstances surrounding that neglect – including notice that there were issues with former counsel, the minimal amount of time it would have taken to

determine the status of the litigation, and the sophisticated nature of these defendants – demonstrate that DHW's neglect is not excusable. Mangeac points out that unlike a layman defendant entirely dependent on the advice of counsel, DHW is represented by the Human Services Division of the Idaho Attorney General's office, which includes sixteen deputy attorneys general, paralegals and support staff. *Goodenough Decl.* ¶¶ 2-3, Dkt. 99. She notes that Deputy Attorney General Robert Luce was assigned as DHW's point of contact for purposes of defending this case. *Luce Decl.* ¶2, Dkt. 104. Additionally, the Idaho Department of Administration monitors the litigation through claims adjudicator Kris Coffman. *Coffman Decl.* ¶1, Dkt. 103. Mangeac notes that Ms. Koffman admits to being aware of the March 1, 2010 pre-trial motion deadline and that she attempted to communicate with former counsel regarding whether he met that deadline on March 2, 2010. *Coffman Decl.* ¶7, Dkt. 103. However, Koffman failed to follow up, presumably because she "was heavily involved with the implementation of the claims side of a new Risk Management computer system." *Coffman Decl.* ¶ 8, Dkt. 103. Finally, Mangeac's counsel takes issue with her inability to refute DHW's claims regarding the reasons underlying former counsel's neglect, and her inability to refute DHW's claims that they adequately monitored the litigation. Counsel explains that unlike DHW's counsel, she has not had an opportunity to discuss the matter with, or depose, these individuals.

The Court understands Mangeac's and Mageac's counsel's concerns. The Court also believes that Mangeac has a point when she suggests that some of the blame may be

placed on the claims adjudicator and Deputy Attorney General point of contact. However, even if the Court allowed Mangeac's attorney to do discovery on the issue by way of depositions and written discovery, the Court believes that most of the blame would still fall on Defendants' former counsel. In his deposition, former counsel "candidly" admits that he did not do his job. *Former Counsel Decl.* ¶ 3., Dkt. 102.

Thus, at most, factors three and four – the reason for the delay and whether the movant acted in good faith – weigh equally for and against finding excusable neglect. When coupled with the other factors – the danger of prejudice to the opposing party and the length of delay and its potential impact on the proceedings – which weigh heavily in favor of finding excusable neglect, the Court finds that Defendants have shown excusable neglect. Accordingly, the Court will grant the motion for enlargement of time and consider Defendants' Motion for Summary Judgment.

4. **Mangeac's Motion to Strike Defendants' Motion for Summary Judgment or Stay Obligation to Respond**

Mangeac filed a motion to strike Defendants' motion for summary judgment or stay her obligation to respond to it. As explained above, the Court will allow the motion for summary judgment. However, when the Court scheduled the evidentiary hearing on the standing issue, the Court effectively stayed all other issues until the standing issue was resolved. Accordingly, the Court grants Mangeac's request to stay her obligation to respond. The Court will give Mangeac 21 days from the date of this order to respond to the motion.

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Reconsideration (Dkt. 95) is GRANTED.[3] The Court reconsiders it's earlier Order granting in part and denying in party Mangeac's motion for partial summary judgment on her claims for declaratory and injunctive relief. The motion is denied in full.

IT IS FURTHER ORDERED that Defendants' Motion for Enlargement of Time (Dkt. 97) is GRANTED. Mangeac shall have 21 days from the date of this Memorandum Decision and Order to file her response to Defendants' pending motion for summary judgment.

IT IS FURTHER ORDERED that Mangeac's Motion to Strike Defendants' Motion for Summary Judgment or Stay Obligation to Respond (Dkt. 114) is GRANTED in part and DENIED in part. The Court will not strike the motion, but Mangeac shall have 21 days from the date of this Memorandum Decision and Order to respond to it.

IT IS FURTHER ORDERED that given the change in counsel for Defendants and the current posture of this case, the Court believes this case should be mediated. Accordingly, the Court strongly encourages the parties to meet and confer regarding whether mediation would be beneficial at this point. One of the Court's four Magistrate

---

[3] The Court is concerned, however, that in granting the Defendants relief a manifest injustice may occur. Plaintiff, who has pursued the case vigorously is now being rewarded for her efforts by being forced to incur additional fees because of the shortcomings of Defendants' first attorney. To prevent this, the Court will condition its grant of the Motion to Reconsider upon Defendants agreement to pay the fees and expenses incurred by Plaintiff in resisting the Motion for Reconsideration.

Judges could be made available for this purpose. The parties should contact the Court's ADR director, Susie Headlee at (208) 334-9067 if they seek the Court's assistance in mediating the case. The Court would also be willing to extend the deadlines for briefing the pending motion for summary judgment in order to facilitate mediation.

IT IS FURTHER ORDERED that the relief granted is conditioned upon Defendants agreeing to pay Mangeac the attorney fees and costs incurred in resisting Defendants' Motion for Reconsideration. Within five (5) days after entry of this Order, counsel for the Defendants shall advise counsel and the Court of whether it agrees to pay such fees and costs. If it declines, the Court will issue an order reinstating its earlier decision. If it agrees, the parties shall meet and confer to determine whether they can agree on the amount to be paid. If they cannot, Plaintiff will file, within three (3) weeks after receiving Defendants' notification, an affidavit of counsel concerning the amount requested and the basis for that request. Counsel for the Defendants will then have ten (10) days to file their objections thereto. Counsel for Plaintiff will then reply within seven (7) days thereafter. The Court will then issue a decision determining what amounts should be awarded to Plaintiff.

DATED: **October 19, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge